Could the clerk call the next case please? Thank you. Mr. LaRose. Good afternoon. Good afternoon. My name is Mark LaRose, and I represent the Appellants Community Landfill Company, today for gravity alcohol, CLC, and their owners, Edward and Robert Brown. When we were last here on this case, the board had issued a $250,000 penalty jointly and with CLC and Edward and Robert Prime. The court reversed and remanded that penalty, as it should have, because the Primes were only found responsible for 8 counts of the underlying claim, while CLC was found responsible for 17 counts. The board reversed and remanded, directing the board to reapportion the penalty. On remand, I don't think the board did much better. They apportioned the $250,000 penalty, 25,000 or 10%, to CLC only, and 225,000 or 90% jointly and separately to CLC, Edward Prime, and Robert Prime. Since CLC has dissolved out of business in its office, and since Robert Prime had sought bankruptcy protection, the board's decision effectively placed 90% of this $250,000 penalty squarely on the shoulders of Edward Prime. I submit to you that this was unfair, unjust, against the manifest weight of the evidence. Now, how do you get to the manifest weight of the evidence on this remand? Well, that's only a small part of it, Justice Carter, because when... You're right. Most of it's the arbitrary and capricious standard. I don't understand. What at all would be the manifest weight of the evidence, based on what was remanded? When the board... It was remanded to the board to properly and fairly apportion the penalty. When they looked at the violations, 17 violations by CLC and only 8 by the Primes, the far more serious ones by CLC and ones that didn't directly affect the environment by the Primes, they misapplied the facts to the application of the penalty. The facts were that CLC definitely deserved more of the penalty, and when we apply those facts to the disproportionate penalty, 10% against CLC, 90% effectively against Edward Prime, I think the manifest weight of the evidence standard was breached. I mean, joint and several, is there a reason for the joint and several concept? There is. Joint and several. There is, except the reason didn't develop from common law. It developed from statutory law. And there is zero statute under... The board gets its power from the Environmental Protection Act that was created by that. And when the state wants to argue that the board has vast authority, it might have vast authority, but it's got to come from the statute, just like the statute that created this board. So when the Environmental Protection Act doesn't allow for, or let alone even mention joint and several liability, I kind of said, well, maybe there's some environmental cases where joint and several liability could apply. And that comes from the Civil Practice Act. I'm asking, I sort of led you astray for a bit. I want to go back first and then go back to what you were just arguing. Go ahead. Back to this manifest weight. Actually, the Constitution created this court. But on the manifest weight of the evidence, what is it that you're saying is the matter? Because when we're reviewing the decision, see if it's arbitrary capricious, and there were facts determined at the earlier lawsuit that were then remanded. Then one thing was remanded for redetermination. Of the penalty. You're right. And this court apparently realized that the enforcement of the penalty the first time around couldn't stand. So when they get the penalty the second time around, and they go through, remember, the board's decisions both on remand and on reconsideration went through pages and pages of the factors under Section 42 of the Act under which they could apply the penalties. It's those factors that they misapplied the facts, and that I think that those decisions are against the manifest weight of the evidence. They say, on the one hand, we can't, here's a classic example. We can't, we don't think we can look at the collectability issue. In other words, the issue of whether or not CLC is collectible, Robert Prime, since he filed bankruptcy, collectible, we can't look at that. But their own statute says that they can look at the issue of unfair hardship or undue hardship on the people that they're assessing penalties against. How is this not an unfair hardship on Edward Prime? I mean, if they would have just, if they would have just apportioned this penalty severally, not jointly and severally, then the effect wouldn't have been to overly burden Edward Prime. The state's brief, which I just read in the Green Room, or in the library, again, for about the fifth time, says, let these guys fight it out. Let the joint and several recipients of this fight it out. Well, it's not much of a fight when your brother's bankrupt and your company has no money. The fact is that this guy got strapped with $225,000. I don't think the Primes and CLC should have had $225,000 worth of anything. CLC was the actor here. These guys were the officers of the company. They didn't run it. They weren't there day to day. And the board found that. The board found that they didn't have day to day responsibility, and that's why they got exonerated from these more serious day to day violations. This was an inequitable apportionment of this penalty, plainly and simply. The CLC should have gotten the lion's share of this, and the Primes should have gotten much, much less. And there shouldn't have been any joint and several liability. The imposition of it in this case, I don't think unless we follow 5-2-1118, the code of civil procedure that allows for joint and several liability in certain environmental instances, and those instances are where the joint harm was caused by the depositing chemicals or contaminants directly into the environment, which didn't happen in this case. There's just no basis for joint and several liability. The court did, in fact, in its remand, at least suggest, if not direct, the board to impose joint and several liability. But that was based on the court's citation of two cases that are inapplicable here. One was a joint court-feasible case. It has nothing to do with this. And the other one was People v. Agpro, where the joint harm was dumping stuff right into the ground. That didn't happen here. So I think, if you agree with me and you reverse the case and remand it again, I think the direction should be not to impose joint and several liability, but instead to impose several liability and to do so fairly. But the analogy, the citation in the earlier case when you dealt with joint liability was based on affirming a joint and several judgment against corporate individual defendants, right? Same as us. Yeah. Same as us. The case that was cited, by the way. People v. Agpro, is that what you're talking about? Yeah, Agpro. Okay. Same as us, but in that case. So the analogy goes that far. Corporate individual defendants jointly liable. However, jointly liable for what? Were they jointly liable for dumping Agpro, as it was in Agpro, dumping contaminants directly into the ground? Yes. Were we jointly and several, were the primes jointly and several liable with CLC for that activity? No. None of the eight counts that the primes were found responsible for had anything to do with direct depositing into the environment. Unlike the CLC violations that contain water pollution, failure to maintain litter, improper disposal of leachate, failure to prevent leachate flow, allowing disposal of tires, counts all of which the primes were exonerated on. So here we have 17 counts that the CLC has, eight counts that the prime has, nine common counts, right? Nine common counts. Or eight common counts, I should say. So of the eight common counts, none of them were a direct effect on the environment. Many of them were my clients signing papers that only they could assign. It's a corporation. A corporation can only act through its officers and its directors. I'm not going to rehash the fact that I really think they shouldn't have been found personally liable for anything. But the fact of the matter is, what they were found responsible for certainly doesn't engender 90% of the penalty. And even if Robert Prime hadn't filed bankruptcy and he was responsible, then the two brothers were. What were you finding? He was a joint in several. He was on a joint in several, even though he took his time. Well, he did file for, I can't remember exactly when he filed for bankruptcy, but it was real close in time. In fact, some of the proceedings against him have been stayed because of the bankruptcy. But anyway, even if he didn't file bankruptcy, the point is, CLC, their defunct company, that they tried their best at to run this landfill, was going to get 10% of this penalty, and these boys were going to get 90%. It's just not fair. It's just not fair. They didn't do 90% of the harm in this case. And I think, excuse me one second, I think the Pollution Control Board realized that. These cases, this is, I think, my 10th time. Well, who did it on behalf of the company? Who did it? The gentleman who ran the landfill day-to-day in the Pollution Control Board, and the government never sued him. That was the testimony in the case, and that was why the Pollution Control Board said these gentlemen aren't responsible because they weren't there day-to-day. They didn't dump stuff into the landfill. So, yeah, do they bear some responsibility? I never said and never will say that they shouldn't have some portion of this penalty. It's not as much as they got. Not nearly as much as they got. Are you saying one-third? I think a fair portion of the penalty would be $100,000 to CLC for the CLC alone violations, another $100,000 to CLC for the joint violations, and $25,000 apiece to the Prime Brothers, all of that. And even if the board would have said $100,000 to CLC and let's chop up the other $150,000, $50,000, $50,000, $50,000, we probably wouldn't be here today because that would have been far more fair than $90,000 and $10,000. I really, I mean, this is a pretty short record and a pretty limited issue. I really don't have anything other to say. Maybe stand up and say something on rebuttal. But I think that this penalty was arbitrary and capricious, and I think that the imposition of joint and several liability in this particular case was inappropriate, and I would ask respectfully that your honors reverse, remand, and with directions to the Pollution Control Board, so we don't come back here again, to not impose joint and several liability, fairly allocate the penalty, and I think it should be at a minimum $100,000 to CLC and chop up the remaining $150,000, $50,000, $50,000, $50,000 separately. Thank you. I'm sorry, any questions? Thank you. You're welcome. Ms. Wunder? Thank you, your honors. The court should affirm the board's allocation of the penalty here. This was a very narrow remand, and the board did exactly what it was told to do on the remand. Actually, in the first appeal, the court agreed with the board, affirmed the board in most of the respects. I think you have to keep that in mind. The violations against CLC were upheld. The violations found against the crimes were upheld. They had argued, oh, we're just acting as corporate officers, we're not responsible. That was rejected by the board and then affirmed by the court. They are responsible for the joint violations. They acted jointly. They committed those violations. The daily operating violations, they were found not responsible for. And that's out of the picture. There were arguments about the penalty amount. They had argued before, this is excessive, this should be, mitigating evidence was overlooked, other types of challenges to the penalty. Mostly those were all rejected. There was one issue where the court felt a remand was warranted. And what the court said was, the $250,000 penalty is okay, but we are remanding it to you, board, to clarify the allocation. And what you have to do on the remand is assess joint and several liability only for the joint violations. That was what was troubling the court, because there's this other subset out there, and the crimes seem to be liable for that as well. So the board had to assess joint and several liability only for the joint violations, and then CLC-only liability for the CLC-only violations. That's exactly what the court did on the remand. They did it in a reasonable way that was supported by the evidence. That comes through when you read the board's decision, when you look at the record. And that should end the inquiry. The court should affirm the board, and the administrative proceeding should end. The board has a lot of discretion in allocating the penalty, and nothing that's been said shows that there was any abuse of discretion. I'd like to address a couple of the issues that counsels... Well, with regard to the economic benefits the board found, I believe that's justified by the former appeal and the hearing before the board on the penalty. Yes. In other words, they found 146-something economic benefits, and the remaining almost 79 dealt with for the duration, how great it was in those circumstances. Yes, I think that's a good summary of what the board did. And you're right, Your Honor, that economic benefit is an important statutory factor that the board is actually required to take into account. They are supposed to impose, assess a penalty that is at least commensurate with the economic benefit generally, unless there's some reason to deviate from that. So they took that as a floor. They said, what economic benefit do we have here in this record? And there was about $150,000 from the financial assurance violations and the delay of the significant modification of permanent violations. They said, well, we know there's that much. There's even more economic benefit, because there was certainly some economic benefit from the over-height violations, because they allowed the primes, the CLC, allowed the landfill to become over-high and never move that waste. So there was some economic benefit to them from over-filling the landfill. It's a little harder to quantify, but we know there was that additional economic benefit, so we're taking that into account, too. We're looking at the nature of these violations, and contrary to the representation that those were least serious, that those didn't have the potential to harm the environment, the board determined exactly the opposite. The board considered the common violations very serious. It found those to be the most significant because they were systemic violations. They were of a far longer standing. And these type of financial assurance violations where there's no money set aside for closure and so on has a tremendous potential to affect the environment and the public. The board has always taken those very seriously. It was entitled to take them seriously in this case. So when there's a proposal of, well, the allocation should really be $100,000 to CLC alone, and then they wanted $100,000 to CLC for the joint part, and they said, well, that will take a bit of the remainder for the rest of the joint violations. That's just re-weighing. That's $25,000. $25,000, $25,000. That's just re-weighing. They're proposing an allocation that they consider more favorable. None of that establishes that the board's allocation was arbitrary or unreasonable in any way. What about, I mean, the fact that the primes, as I understand it, were not found guilty of any act of polluting? I'm going to have to consider I'm supposed to be over-hyping, but polluting, you know, dumping any pollution into the environment, and CLC was. Is that correct? There were most of the CLC violations were daily operating violations, not adequately dealing with litter on a particular day. There was one violation that the board, CLC-only violation, that the board did consider more serious. There was one that involved threatened water pollution in a particular incident with how they were treating some leachate, and the court said, well, this one's more serious. And did impose an additional penalty amount for that particular violation. But the notion that there was something much more serious about the nature of the CLC-only violations is not what the board determined and is not what's supported by the record. There's an idea here that was raised that, you know, I'd like to address. There's kind of an argument made that the board somehow didn't have the authority to assess joint and several liability for the joint violations, and there's no merit to that. I think for one thing, at this point, even raising an argument like that is foreclosed by the court's remand, because the board considered whether joint and several liability would be appropriate. The board was trying, excuse me, the court. The court considered whether joint and several liability would be appropriate because the court was trying to give some clear directions to the board on remand. So it assessed the situation and said, yes, this would be a situation for joint and several liability. The board could do that. In fact, directed the board to do that. I don't know that the board really could have done anything else. So that really becomes the law of the case here, because the court looked into that and made a determination. So there are law of the case issues, and there's also scope of remand issues, because the board, of course, had to conform its actions to what the court told it to do. So I think that's controlling here. I think there are also forfeiture issues, because the court did look into this and decide that joint and several liability was appropriate. But there was never a developed argument by CLC and the primes challenging joint and several liability, although, as I said, the court had to look into it on its own. And they never indicated that there was some problem with it as such, even on remand. I think on remand they said $10,000 should have been. They proposed a joint and several allocation, and then on reconsideration, they kind of came up with a theory that, oh, well, maybe you can't do that here. So I think there are issues why it's really not even an issue in this case, because it has already been decided. But even apart from that, it is meritless. They say, well, there's no reference to this in the statute, but they're ignoring what is in the Environmental Protection Act. And the Environmental Protection Act clearly allows the board to make such final orders as it considers an appropriate resolution of any particular case before it. And the act clearly allows the board to assess penalties against any person. All of these defendants are people. And that is sufficient to establish the board's authority. There's also case law. This court recognized in its decision the first time on appeal, the Agpro case. There's an additional case that I cited in the brief called Wasteland. So there have been instances where circuit courts or the board have assessed civil penalties against a corporation and its wrongdoing principles jointly and severally. And those penalties have been affirmed by reviewing courts. What about the, you know, they make the argument that was rejected by the board that the board should have considered the insolvency of the corporation and the bankruptcy as one of the problems. The board rejected it. They raised those arguments before the board, and the board ultimately did not find that those factors posed some type of unreasonable hardship on Edward Prime. This is perhaps the last significant argument they make. They did not pose some type of unreasonable hardship on Edward Prime that would warrant anything other than joint and several liability for the joint violations. And that was perfectly reasonable and fair to make that determination. These violations were committed jointly by all of the actors as much as the primes want to disavow their responsibilities with joint violations. And it is entirely fair and reasonable to hold them jointly responsible. You know, if at the end of the day one of the defendants feels that they, first of all, none of the defendants have contributed anything to this penalty amount. The penalty remains unpaid. But if at the end of the day one of the defendants feels that they've paid too much to the penalty amount, then that's something that needs to be worked out and resolved among themselves. It's not a reason to, the wrong party here, the people, is entitled to full redress that's commensurate with the nature of the violations. That's not a reason to penalize the wrong party. This is something that should be worked out among the defendants, just as in any type of joint and several liability situation. So the board, you know, evaluated these arguments, thought, oh, give us a break here because the corporation is now dissolved and Brother Robert is in bankruptcy. And the board did not feel that there was any unreasonable financial hardship or any reason to deviate from holding the… On this hardship argument, that, you know, it's a hardship in these circumstances but the remaining brother is not found. What would be the standard for those kinds of cases? I'm sorry? What would be the standard, the legal standard for the board to make those determinations about hardship? Well, the board looks at all of the statutory factors to determine the appropriate penalties. So, you know, these are the factors that would be properly before the board. There's no free-floating, unreasonable financial hardship standard in any case. I think they're sort of suggesting that this was such a significant mitigating factor that, you know, joint and several liability somehow became no longer appropriate. Well, where is… I mean, we know that whether it's a circuit court or an appellate court, for that matter, enters an order that it doesn't have authority to do, it doesn't have authority to enter, that order is void. Where is… I mean, I know what the first order said, but where is the authority for a fine or a penalty to be issued jointly and severally? You think a joint court cases and civil trial. Where is the authority for a joint and several in the case of fines? I believe that that's sufficiently addressed in the Act. But what the Act does tell us, the Act allows the board to make such final orders as it deems appropriate under all the circumstances in any particular case. And the Act also allows for civil penalties to be assessed against any person. The Act also has to be liberally construed to support its purposes. One of its purposes is to hold joint… people who are responsible for violations to hold them responsible. So considering all of that, the Act… that is what allows joint and several liability. They're proposing a logical construction of the Act. Thank you. Additionally, as I mentioned, there's case law where circuit courts and the board have imposed joint and several liability under the Act. And they draw in a couple of statutes in the Civil Practice Act to say, well, this really controls the circumstances where joint and several liability is appropriate. Those statutes really aren't relevant here. They don't control proceedings before the board. And they apply to particular types of tort situations, negligence-based torts or strict liability torts that have to do with personal injury or property damage. And then there's a subset that involves toxic torts or medical malpractice. None of those circumstances address what's at issue here. They're just not relevant. And they certainly don't preclude… There are circumstances when they are relevant. They describe these certain types of tort situations, but they don't preclude joint and several liability in other types of situations. They just don't address it. So nothing about those statutes has any relevance here. What your position is is the Act itself allows the board to establish an appropriate penalty for joint and several. Yes, because agencies have the powers that they need to carry out their statutory duties. I think what is within the statute is very clear support of authority for what the board did here. And the statute didn't need to go into any more detail about that. And the statutes are a general framework. They don't address every detail of what might be relevant for every case. Thank you. With that, we ask that this court affirm the board and this lengthy administrative procedure. Any other questions? Mr. LaRose. The penalty hasn't been paid in this case because we're here arguing that it was unfair. So that kind of takes care of that. The Act, the Environmental Protection Act, somehow generally allows for joint and several liability. What all it needed to do was add two or three lines. The legislature only needed to add two or three lines, like they did in the Civil Practice Act, like they did in the Illinois Supreme Court rules, to allow for joint and several liability under certain circumstances. This concept that this global statute, the Environmental Protection Act, that has evolved since I started practicing environmental law in 1982, has evolved for thousands and thousands of separate sections and hundreds of pages of detailed responsibility of the board, the Environmental Protection Agency, the Act, couldn't have said, and the board has the right to put in a joint and several liability under appropriate circumstances. They didn't. And I think that this concept that this global statute somehow gives them a power that's not enumerated in there in the statute is incorrect. I really think this joint and several liability thing is important. It's something you need to take another close look at. I realize and respect that on remand you cited a couple cases that said, suggested or even directed them to issue joint and several liability. But if that was incorrect because the law doesn't support that, because it's not in the Act, and because the cases that were cited, AGPRO and, sorry, this one I'm going to quote you right now, saccharitis versus Campbell, which is a joint tort-feasible case, those two cases that were cited are inappropriate or inapplicable to this case. I think the court has an obligation to take another look at that and if it was a mistake when you suggested or even directed them to issue joint and several liability, I respectfully suggest that you need to fix that. Finally, this notion that the board somehow considered all these factors and came up with this calculation of $350,000 is just nonsense. When they considered all these factors and they could look at the original board's order, they issued $250,000 because that's what the state asked for. The state asked for a $250,000 penalty and the board just rushed it. They could have issued a $25,000 penalty. They could have issued a $2.5 million penalty. They did exactly what the state asked them to do, and they did that the second time around too. Perfect example. The minimum fine for the CLC-only violations, the ones that Ms. Wunder says aren't really important, even though it was water pollution and things like that, the minimum fine was $18,000. It could have been $10,000 a day up to several hundred thousand dollars. They issued a penalty against CLC-only of $25,000. The minimum fine against the other violations wasn't much more than $18,000 and they issued a penalty of $225,000. Why did they do that? Because Ed Pine was going to have to pay it. Finished. Respectfully request that we reverse command with directions not to have joint incentive liability and to fairly apportion the penalty. Again, if it was $100,000 for CLC, chop up the rest of it $50,000, $50,000, $50,000 separately, and we won't be back here. Thank you. Any other questions? Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel change. Thank you very much.